UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| LILLI GARCIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 5:09-CV-113-BG |
| | ) ECF |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Lillie Garcia seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits. The United States District Judge transferred this case to the United States Magistrate Judge, but Garcia did not consent to the jurisdiction of the court. Pursuant to the order of transfer, the undersigned files this "Report and Recommendation." After reviewing the arguments of the parties, the administrative record, and the applicable law, this court recommends that the Commissioner's decision be affirmed and that this action be dismissed.

**I.      Statement of the Case**

Garcia stopped working in 2002 as a fast food worker/manager and alleged that she became disabled on May 15, 2005, the date on which she was diagnosed with rectal cancer. (Tr. 86, 92, 95, 107, 166.) According to the medical records, Garcia underwent surgery to remove the cancer on June 1, 2005, and thereafter underwent radiation that she completed on August 29, 2005, and chemotherapy that she completed on March 23, 2006. (Tr. 180, 204, 278.) Physicians' notes during the time Garcia was undergoing chemotherapy indicate that, with the exception of occasional

gastrointestinal problems that were addressed with medication, Garcia denied side-effects such as nausea, vomiting, fever, chills, and night sweats; her energy level and appetite were good; and she did not experience weight loss. (Tr. 180, 212, 217, 222, 226, 238, 248.)

On October 6, 2005, at a follow-up appointment regarding chemotherapy treatment, Garcia complained of pain and problems with her right arm that were described as "a life-long issue." (Tr. 244.) A bone scan and an x-ray showed a lesion on her right upper arm/shoulder area that was later identified as a cartilage lesion. (Tr. 245, 359.) On November 16, 2006, Garcia underwent surgery to remove the lesion as well as bone grafting, and she underwent physical therapy thereafter. (Tr. 359, 469.) On November 16, 2006, Garcia's doctor noted that she had full range of motion in her right shoulder but that there was tenderness in some areas. (Tr. 469.) The doctor recommended that Garcia begin stretching exercises and using a tennis elbow brace and that she return for a follow-up appointment if the symptoms did not improve. *Id.*

On January 25, 2007, a scan of Garcia's lumbar spine showed disc degeneration and mild spinal stenosis. (Tr. 549, 614.) Garcia was thereafter referred to Hemmo Bosscher, M.D., a pain specialist, for treatment to address her complaints of lower back and rectal pain.[1] (Tr. 547.) Dr. Bosscher began treating Garcia for her pain in February 2007 and noted at that time that Garcia's back pain had begun one year prior and that the pain was constant and moderate in intensity and

---

[1] Garcia's complaints of rectal pain began while she was undergoing chemotherapy; she complained sporadically of the pain during some follow-up appointments with her oncologist after her chemotherapy treatments. (Tr. 230 ("some rectal pain" on December 1, 2005); Tr. 217 (reported rectal pain and discomfort with diarrhea on February 9, 2006)). Thereafter, the pain was attributed to hemorrhoids. On May 11, 2006, Garcia complained to her primary care physician that she experienced rectal pain and difficulty sitting, and on June 5, 2006, Fred Hardwicke, M.D., an oncologist, attributed the pain to hemorrhoids. (Tr. 433, 648, 650.) On September 6, 2006, Dr. Hardwicke noted that Garcia appeared to be doing well and that she reported only occasional rectal pain; he also noted that a recent colonoscopy showed internal and external hemorrhoids. (Tr. 336-37.) A couple of months later, on November 8, 2006, Garcia's primary care physician remarked that Garcia complained of rectal pain and that she suffered from internal and external hemorrhoids. (Tr. 427.) The physician indicated the same on January 3, 2007. (Tr. 426.)

that it worsened with sitting, walking, and laying on her right side. (Tr. 547.) In regard to Garcia's rectal pain, he noted that it also began one year prior, that it was severe, and that the pain was relieved by standing or relieving pressure from the area. *Id*. Dr. Bosscher treated Garcia's pain with pain medications and injections that he provided on a monthly basis. (Tr. 545, 549.)

An Administrative Law Judge ("ALJ") held a hearing at which Garcia testified. (Tr. 21-44.) She testified that she could not perform her past work in the fast food industry because she experienced fatigue and difficulty walking, standing, and using her right arm. (Tr. 36-37.) She claimed she could not perform a job while sitting because of pain in her rectum. (Tr. 37.) The ALJ determined that Garcia was capable of performing light work that involved simple tasks and only occasional overhead reaching and that she was not disabled because she could perform her past work as a fast food worker despite the limitations. (Tr. 16, 20.)

Garcia argues that remand is required on two grounds. She claims the ALJ failed to evaluate the combination of her impairments and failed to follow the requirements of Social Security Ruling 82-62.

## II.     Garcia's First Point of Error

Garcia argues that the ALJ failed to evaluate the combination of her impairments and points to § 404.1523 of the Regulations which directs that the Commissioner must consider the combined impact of the claimant's impairments throughout the disability process. Garcia claims that the ALJ did not consider her claim that she suffers from severe residual pain in her rectum area, her claim that the pain is relieved only with methadone and hydrocodone, medications that make her sleepy, her testimony that she must get on her hands and knees in order to relieve pressure from the area of her rectum in order to feel relief from the pain, or her testimony that standing more than 15 minutes

3

causes her to experience intense pain.  She also contends the ALJ did not consider pain management records from Dr. Bosscher, records that establish that she suffers from pain and has undergone epidural spinal injections in order to manage her pain.

As Garcia argues, the ALJ must consider the combination of the claimant's impairments. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (stating that if the ALJ finds a combination of severe impairments, he must consider the combined impact of the impairments throughout the disability determination process).  The ALJ must also consider the claimant's pain.  Once the existence of a medically determinable physical or mental impairment is reasonably established, the ALJ must provide specific reasons and make specific findings concerning the credibility of a claimant's statements about his or her symptoms.  20 C.F.R. § 404.1529 (2009).  The ALJ's evaluation of the claimant's credibility is entitled to judicial deference if supported by substantial evidence in the record.  *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  The ALJ's credibility evaluation must be set forth with sufficient specificity, but it need not follow formalistic rules.  *See Falco v. Shalala* 27 F.3d 160, 163-64 (5th Cir. 1994).

Contrary to Garcia's contentions, the ALJ considered her claims of pain, her testimony regarding the measures she takes to relieve her pain, and the medical evidence from Dr. Bosscher. (Tr. 17.)  The ALJ gave some weight to Garcia's claims by limiting her to work that involves only simple tasks.  (Tr. 15.)  On the other hand, he determined that Garcia's claims were not entirely credible.  In so finding, he noted evidence that Garcia stopped working because of fatigue, loss of energy, and musculoskeletal pain, that she was subsequently diagnosed with cancer, that she underwent surgery and treatment for her cancer without significant side-effects, that the cancer had not recurred, and that a subsequent colonoscopy was normal with the exception of hemorrhoids,

which had not been described as severe. (Tr. 17.) The ALJ therefore found the medical evidence more persuasive than Garcia's claims of disabling pain. Such determinations are "precisely the kinds of determinations that the ALJ is best positioned to make," *Falco*, 27 F.3d at 164, and the ALJ's determination is supported by substantial evidence, *see* Tr. 38, 107, 180, 212, 244, 334, 515, 762.

### III.     Garcia's Second Point of Error

Garcia believes the ALJ committed reversible error because he did not provide a specific finding in regard to the mental demands of her past work. She argues that Ruling 82-62 requires the ALJ to make such a finding and claims the ALJ erred because he did not ask her or the vocational expert about the mental demands of her past work.

Ruling 82-62 sets forth the procedure under which the ALJ must determine a claimant's capacity to perform past relevant work. SSR 82-62, 1982 WL 31386. The Ruling directs that careful consideration of the interaction between the limiting effects of the claimant's impairments and the physical and mental demands of the claimant's past work is necessary in order to determine whether he can still perform past work. *Id*. at * 2 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). The Ruling directs, however, that specific findings are necessary only insofar as the claimant's impairments may impact upon his ability to perform the demands of the past work: "Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations." *Id*. at * 3. "Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained *as appropriate*." *Id*. (emphasis added). Based on the foregoing directives, Ruling 82-62 requires the ALJ to obtain information about the particular demands of the claimant's work only in cases in

5

which the claimant suffers from non-exertional impairments that might impact upon his ability to perform the demands of his past work. *Id.* Thus, for example, if the claimant suffered from an impairment that affected his ability to use his hands, it would be appropriate for the ALJ to determine whether the claimant's past work would require the claimant to manipulate objects with his hands. However, in the absence of evidence of an impairment that would affect manipulation abilities, there would be no need to ask whether the claimant's past work involved tasks that would be affected by the claimant's limitations with his hands. Likewise, in a case in which the claimant does not suffer from mental or emotional impairments that would impact upon his ability to perform the mental demands of work, there is no need for a finding in regard to the mental demands of past work. In fact, Ruling 82-62 specifically directs that a determination regarding the mental demands of past work is necessary only in a claim in which mental limitations are at issue:

> For a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc. in order to determine if the claimant's mental impairment is compatible with the performance of such work.

*Id*.

In this case, there is no evidence that Garcia suffered from mental or emotional impairments that would have impacted upon her ability to perform the mental demands of work. Garcia claimed only that physical impairments limited her ability to work: she claimed that she quit working because she was tired and "didn't want to work any more"; and she completed a form on which she indicated that she did not have mental or emotional problems that limited what she was able to do. (Tr. 107, 123.) Although Garcia testified that she experienced depression and anxiety and began taking antidepressant medication when she was diagnosed with cancer (Tr. 32-33), she never indicated that her depression or anxiety resulted in limitations upon her mental abilities or that the

6

conditions limited her ability to work, (Tr. 138, 141, 180-81). In addition, other than a notation by a physician in 2008 that Garcia had "some anxiety and depression," no physician indicated that she suffered from a mental or emotional impairment that affected her ability to perform activities of daily living or that would have affected her ability to perform any mental demand associated with work. (Tr. 222-23, 231, 332-33, 409-20, 507, 699.) As the ALJ found, no physician referred Garcia to counseling or psychotherapy, and the treatment she underwent for her depression and anxiety was minimal. (Tr. 19.) Because a mental or emotional impairment was not at issue in this case, the ALJ was not required to obtain information about the mental demands of Garcia's past work. *See* SSR 82-62, 1982 WL 31386, at * 3. The Commissioner's regulations direct that the ALJ may rely on the expertise of a vocational expert or information in the Dictionary of Occupational Titles at step four of the sequential evaluation process to determine whether the claimant is capable of performing his past work. 20 C.F.R. § 404.1560(b)(2). The ALJ determined that Garcia was capable of performing light work that would involve only simple tasks, and the vocational expert testified that Garcia could perform her past work as a fast food worker despite the limitation. (Tr. 20, 40-41.) The ALJ did not err, and his determination that Garcia can perform her past work is supported by substantial evidence.

## IV.    Conclusion and Recommendation

Judicial review of the Commissioner's denial of Social Security benefits is limited to two issues: (1) whether the Commissioner's final decision is supported by substantial evidence, and (2) whether the Commissioner used proper legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's

decision, and if the court finds that the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citations omitted). A finding of no substantial evidence is appropriate only if no credible evidentiary choices exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Commissioner's decision in this case is supported by substantial evidence and was reached through application of proper legal standards. The undersigned therefore recommends that the District Court affirm the Commissioner's decision and dismiss Garcia's complaint with prejudice.

## V.    Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:     May 27, 2010.

_____
NANCY M. KOENIG
United States Magistrate Judge

8